IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

BRIAN J. SCHELL,                              )
                                             )
          Plaintiff,                         )
                                             )
VS.                                          )        NO. 3:19-cv-01326 JPG
                                             )
ERIC SCHELLHARDT,                            )
MARC ASBURY,            and                  )
MADISON COUNTY,                              )

<u>PLAINTIFF'S MOTION IN LIMINE</u>

NOW COMES the Plaintiff, BRIAN SCHELL, by and through his attorneys, Polinske &

Associates, P.C., and Brian L. Polinske and pursuant to the Federal Rules of Evidence and

Federal Rules of Civil Procedure moves this Court *in limine* as follows:

1.     **<u>To Preclude Evidence or Argument as to Defendant Deputies' Commendations or
Awards.</u>**

Such evidence is irrelevant to any issues in this case and is inadmissible under all the

rules of evidence governing character evidence.  See Fed. R. Evid. 404, 405, 607, 608, and 609.

The probative value of such evidence is nil and the prejudice to the Plaintiff substantial.  Indeed,

such evidence seems designed primarily to garner sympathy for the Defendants.  *See* Fed. R.

Evid. 403.

Character evidence in the form of past commendations and/or honors of the Defendant

Deputies is wholly unrelated and irrelevant to Plaintiff's claims.  Such evidence does not bear

upon the issue of excessive force used by Defendant Deputies, nor on the allegations that they

made false claims against the Plaintiff.  It is self-serving and catered to cast Defendants in a

favorable sidelight.  Indeed, character evidence is normally inadmissible in a civil rights case.

*See Cohn v. Papke*, 655 F.2d 191, 193 (9th Cir.1981); Fed. R. Evid. 404.  The sole questions to

be resolved here are whether, objectively, Defendant Deputies used unreasonable force against Plaintiff and/or falsely arrested him, and created false testimony against him regarding the incident. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). Lastly, evidence of commendations and awards constitutes inadmissible hearsay and comes under none of the exceptions of the federal rules. See Fed. R. Evid. 801-804; *United States v. Nazzaro*, 889 F.2d 1158 (1st Cir. 1989); *United States v. Washington*, 106 F.3d 983 (D.C.Cir. 1997); *United States v. Barry*, 814 F.2d 1400, 1404 (9th Cir. 1987). Hence, it must be excluded from trial.

*Court Ruling:  Allowed _____        Denied _____        Taken Under Advisement ____*

2.      **To Bar Argument Regarding "Excessive Damages" or Evidence of Taxpayer Liability or Higher Taxes**

Plaintiff moves this Honorable Court to exclude any testimony, evidence, or argument to the effect that: (1) Plaintiff has asked for more money than he expects to be awarded; (2) the recovery of Plaintiff is not subject to income tax; and/or (3) that defense counsel is shocked by Plaintiff's damage request. Plaintiff also moves this Court for an Order *in limine* precluding from the trial any testimony, evidence, or argument indicating that taxpayers should not be held liable for the incident that occurred on September 11, 2018 or that damage request would place a burden upon the public as a whole or increase taxes. References to taxes or taxpayer payments will improperly influence a jury to deliberate on bases other than the evidence presented at trial. If a jury hears reference regarding tax increases or taxpayer liability, a juror would be motivated to rule in favor for Defendants for their own personal financial interests of ensuring that their taxes are not raised, regardless of the facts presented at trial. Such references could also encourage jurors to decrease any award for Plaintiff. For these reasons, any reference to taxes or taxpayer liability should be precluded from evidence and argument.

*Court Ruling:  Allowed _____        Denied _____        Taken Under Advisement _____*

3.       **To Bar Any Mention that Deputies or Police Officers Risk Their lives on the Job**

Defendants should be barred and/or precluded from arguing or presenting evidence or testimony that police officers risk their lives on the job.  This evidence is not relevant and causes the jury to take their eyes off the ball – the facts of the case.  While it is true that police officers may risk their life on the job at times, these risks are not relevant to the incident in question.  As the risks are not relevant, the evidence should be inadmissible.  Further, the fact that officers do have some risk in their job speaks to the nature of their profession and does not meaningfully contribute to a determination of whether the Defendant Deputies in this case used excessive force, falsely arrested Plaintiff or maliciously prosecuted him.

Plaintiff submits that such evidence or testimony is inadmissible for similar reasons as evidence of commendations and awards.  See Plaintiff's *Motion in Limine* No. 1, *infra*. Introducing testimony of the risks involved in a police officer's job simply bolsters the officers as character evidence and is a thinly-disguised way to suggest to the jury that police officers are heroes who should be viewed with sympathy and whose testimony should be given greater weight.  Such evidence has no probative value regarding the disputed issues in this case and would be highly prejudicial to Plaintiff.  *See* Fed. R. Evid. 401, 403 and 404.

Alternatively, if Defendants can ask witnesses questions regarding the risks involved, they should not be allowed to make any arguments related to the general risk a police officer has on the job in their closing argument.  The closing argument should focus solely on the fats of the case or a reasonable inference that can be drawn from the facts.  *See Walden v. Illinois Central Gulf R.R.*, 975 F.2d 361, 365 (7th Cir. 1992).  The risks that police officers may generally face on

the job have no connection to the facts of this case and therefore should not be allowed. If Defendants are allowed to speak about the general on-the-job risks of police work, Plaintiff should also be allowed to present evidence and argument about the abuses many police officer misconduct cases in Illinois and nationwide, including cases in which officers have been found to engage in torture, severe beatings, theft and drug planting, among other wrongdoing. In addition, Plaintiff should be able to present evidence and argument regarding specific acts of misconduct committed by the Defendant Deputies in the past.

It should be clear that such discussions of the general circumstances involved in the work of the police officers are both a distraction and a diversion from what Section 1983 trials are supposed to be about – the dispassionate weighing of facts and evidence for each case to determine whether the specific officers in that case committed wrongdoing. For Defendants' argument to be offered to the jury, evidence would have to be admitted during trial. Plaintiff submits that evidence regarding the daily activities of police officers and the extent to which officers risks their lives has little, if any probative value. Closing arguments are supposed to be based on the facts presented at trial and reasonable inferences from the facts. Thus, in the absence of facts at trial, Defendants should be precluded from referencing in their closing argument the risks officers face on the job.

*Court Ruling: Allowed* _____    *Denied* _____    *Taken Under Advisement* _____

4.    **To Preclude the "Anybody-Can-File-A-Lawsuit" Argument**

A technique commonly used by defense counsel is to argue in closing argument that anybody can walk in the court room door and file a lawsuit. Defendants commonly elaborate on this argument by stating that because a plaintiff can easily file a lawsuit, Plaintiff receives "this

court room, this judge, technical equipment and you the jury's time." This argument is made in the abstract and generates nothing but speculation. For example, at no time is evidence introduced at trial as the costs for filing a lawsuit; who is responsible for the costs' that ECF training is necessary to file a lawsuit; that lawsuits must be filed consistent with FRCP Rule 11; that lawsuits must withstand Rule 12 scrutiny, *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), and *Bell Atlantic Corp., v. Twombly*, 550 U.S. 544, (2009); that lawsuits must survive motions for summary judgment; that evidence must survive motions *in limine*; that a federal trial practitioner must have tried numerous trials prior to being able to prosecute a case in Federal court; that several thousand dollars are expended to engage in discovery (depositions, expert witness retention, witness, etc.); that written discovery must be answered, etc. In other words, this argument has had no factual support during the trial. Closing arguments are limited to the facts in evidence and reasonable inferences therefrom. *Walden v. Illinois Central Gulf R.R.*, 975 F.2d 361, 365 (7th Cir. 1992). For this reason alone, Defendants should be precluded and/or barred from making said argument.

The "anybody can file a lawsuit" argument should also be precluded and/or barred because it is in complete degradation of legal process and disregards the entire litigation process. This argument insinuates that Plaintiff's claims are frivolous. The legal process provides many different avenues to ensure that a frivolous or completely baseless claim does not get to a jury (i.e., *Iqbal, Twombly*, Fed. R. Civ. P. 11 and 12(b), summary judgment). Given these safeguards, Defendant should be precluded and/or barred from making the argument that anybody can come in a courtroom and file a lawsuit.

In addition, the argument is made in a one-sided, prejudicial context. If plaintiff in a Section 1983 cases get a "free pass" to the courthouse, as Defendants' argument implies, surely

the jury is entitled to know that the Defendants get a "cost-free" defense.  Defendants, unlike

most defendants in civil cases, does not have to pay attorneys or costs of litigation.  And, as

noted elsewhere in this motion, if found liable, Defendants do not have to pay compensatory

damages.  Given the aforementioned reasons, Defendants should be precluded and/or barred

from making the arguments or presenting the evidence outlined in this motion.

*Court Ruling:  Allowed* _____     *Denied* _____     *Taken Under Advisement* ____

5.   **To Prevent Defendant Deputies from Wearing Uniforms and Medals at Trial**

For the same reasons mentioned in Plaintiff's *motion in limine* 1, *infra*, Defendant

Deputies should be precluded and/or barred from wearing their uniforms or medals in the

courtroom.  The introduction of this evidence at trial is inadmissible under Federal Rule of

Evidence 404(a).  See Fed. R. Evid. 404(a).  Nor does such evidence fall under the character

evidence exceptions.  See Fed. R. Evid. 404(a)(1), 404(a)(2) and 404 (a)(3).

Character evidence in the form of uniforms or medals of the Defendant Deputies is

wholly unrelated and irrelevant to Plaintiff's claims.  Such evidence does not bear upon the issue

of excessive force used by Defendant Deputies or the claims of false arrest and malicious

prosecution.  It is self-serving and designed to case Defendants in a favorable lights.  Thus, it is a

distraction from the spotlight of the true issue at bar in this matter: whether, objectively, the

Defendant Deputies used force that was unreasonable and whether they falsely arrested and

maliciously prosecuted the Plaintiff.  See *Graham*, 490 U.S. at 395.  Additionally, since a 1983

action must be filed against an individual officer and not the governing body that employs him, it

would create improperly in the jury's mind the impression that a judgment against that individual

would be a judgment against his employer.  Lastly, such evidence has no probative value

regarding the disputed issues in this litigation and would be highly prejudicial to Plaintiff.

Hence, it must be excluded from trial.  See Fed. R. Evid. 401, 403 and 404.


*Court Ruling:  Allowed* _____     *Denied* _____     *Taken Under Advisement* ____

6.      **To Bar Evidence of or Argument Regarding Settlement Attempts and/or Attorneys' Fees**

        Plaintiff asks that this Court bar any reference to the circumstances under which the

attorneys for Plaintiff were employed or the fees or the contingence contract under which the

attorneys have been retained pursuant to Fed. R. Evid. 402.  Plaintiff also asks that this Court bar

any testimony or evidence related to any settlement attempts or discussion aimed at settlement of

Plaintiff's claims.  See Fed. R. Evid. 401, 402, 403 and 408.

*Court Ruling:  Allowed* _____     *Denied* _____     *Taken Under Advisement* ____

7.      **To Sequester Any Non-Party Witnesses**

        Plaintiff asks this Court to exclude any non-party witnesses from the courtroom during

testimony.  See Fed. R. Evid. 615.

*Court Ruling:  Allowed* _____     *Denied* _____     *Taken Under Advisement* ____


8.      **To Bar Evidence/Argument As To An Apology**

        A technique frequently used by certain defense counsel is to apologize on behalf of their

clients with regard to an injury sustained by a plaintiff.  In this fashion, defendants hope to have

an apology, warmly presented, to inure to the benefit of their clients.  The same can be said of

deputies to who testify at trial.  An apology absent an admission of liability is not relevant to any

issues or claims in this case but, rather, is calculated toward garnering sympathy from the jury so

that the jury will reduce its award.  An apology will not resolve the issues that lie at the core of

this action – whether the Defendant Deputies used excessive force, falsely arrested, or

maliciously prosecuted him.  It is geared inappropriately to mitigate damages.

*Court Ruling:  Allowed* _____        *Denied* _____        *Taken Under Advisement* _____

### 9.    To Bar Evidence of, Reference to, or Argument Regarding Prior Arrests/Criminal Involvement and/or Convictions and Incarcerations of Plaintiff

The discovery in this case has revealed that there had been prior visits by law

enforcement to the Plaintiff's residence.  The issues involved domestic allegations.  He was

never charged with any such offense from the incidents.  Further, the discovery in this case has

revealed that some members of the Defendants' employer (Madison County Sheriff's

Department) had garnered information that indicated Plaintiff was "less than cooperative" with

law enforcement in the past.  Discovery in this case did not reveal a single incident wherein the

reporting officers stated in their reports that the Plaintiff acted accordingly.

Discovery has also revealed that the Plaintiff was arrested for a DUI and had a pending

suspension the date of this incident (albeit he had a valid driving permit at the time).  The

Plaintiff respectfully moves this Court to bar the defense from attempting to introduce any

reference regarding the DUI (or its disposition of court supervision), the DUI Statutory Summary

Suspension, or any of the other incidents to which law enforcement made contact with the

Plaintiff.  None of the aforementioned law enforcement contacts resulted in a conviction for any

criminal offense against the Plaintiff.  At the time of the initial traffic stop of Plaintiff it appears

that Defendants did not have knowledge of the DUI or the suspension therefrom.  Therefore,

those issues are not relevant issues in this trial.  See *Strong v. Clark*, 1990 U.S. Dist. LEXIS

5842, 3-4 (N.D. 1990) (excluding evidence of Plaintiff's prior arrest … because officers did not know about arrest prior to the officers' interaction with the Plaintiff).  The only possible uses by Defendants for introducing evidence of the DUI or suspension is as improper character evidence aimed at diminishing Plaintiff as a human being in the eyes of the jury, to make him out to be of bad character, and/or to impermissibly suggest action in conformity therewith.  Such a use is a deliberate prejudicial attack on Plaintiff.  See Fed. R. Evid. 402, 403, and 404.  Evidence related to a person's character or a trait of character is inadmissible unless it falls under one of the exceptions enumerated in Fed. R. Evid. 404.  See *Strong v. Clark*, 1990 WL 70421, 2 (N.D. Ill. 1990)(prior criminal behavior is inadmissible to prove a party's bad character);  *Lovergine v. Willerth*, 1986 WL 10352, 2 (N.D. Ill. 1986) (holding that a party's previous arrests are precisely the type of evidence Fed. R. Evid. 404 is designed to exclude.).  This is because this type of evidence is more prejudicial than probative.  See *Brandon v. Village of Maywood*, 179 F.Supp.2d 847, 854 (N.D. Ill. 2001) (past arrest inadmissible to show bias because potential for unfair prejudice outweighs any probative value.). Thus, Plaintiff's prior arrest or incident that did not lead to a conviction should be excluded.

*Court Ruling:  Allowed* _____      *Denied* _____      *Taken Under Advisement* ____

10.    **To Bar Evidence of Collateral Payments of Medical Expenses**

Plaintiff incurred medical bills because of his treatment at Oliver Anderson Hospital on September 11, 2018 and at Gateway Regional the week following.  Any payments or reimbursements by third party treatment at either provider should be excluded pursuant to the universally-accepted collateral source rule.  See *Carter v. Berger*, 777 F.2d 1173, 1175 (7th Cir. 1985) (holding that the "collateral benefit rule of tort law rests on the belief that the wrongdoer

should be made to pay-the better to deter like conduct – whether or not the victim has

providently supplied another source of compensation, unless the supplier of the compensation

has a subrogation clause") (internal quotations omitted); *National Labor Relations Board v.*

*Marshal Field Co*., 129 F.2d 169, 172 (7th Cir. 1942) ("The wrongdoer may not be benefited by

collateral payments made to the person he has wronged").  Any mention or evidence of insurance

payments or other collateral source of payments for Plaintiff's medical bills should be precluded

from evidence.

*Court Ruling:  Allowed _____        Denied _____        Taken Under Advisement ____*

11.    **If Defendants Introduce Evidence Related to Defendants' Financial Position,
Plaintiff Should Be Allowed to Introduce Evidence of Indemnification**

Plaintiff believes that Defendants may seek to introduce evidence and testimony

regarding the financial status of the individual Defendant Deputies and their purported inability

to pay an award of punitive damages.  The result of such evidence, if not the goal, is to suggest

to the jury directly or indirectly that a verdict against Defendant Deputies would lead a personal

financial hardship.  Plaintiff respectfully submits that if the Defendants introduce the financial

status of the Defendant Deputies into the trial of this action, Plaintiff should be allowed to inform

the jury that the Defendant Deputies would not have to personally pay compensatory damages

but that those damages would be paid by Madison County.

Illinois law provides that a "local public entity" such as Madison County "is empowered

and directed to pay any tort judgment or settlement for compensatory damages (and may pay any

associated attorney's fees and costs) for which it or an employee while acting within the scope of

his employment is liable…". 745 ILCS 10/9-102.  The Seventh Circuit has long held that when

defendants introduce evidence of their inability to pay a damages award, this "opens the door" to

evidence of indemnification.  See *Lawson v. Trowbridge*, 153 F.3d 368, 380 (7th Cir. 1998). (holding that when defendants focus on their "financial weakness," the district court should permit the plaintiff to inform the jury about the state's indemnification statute).  Judge Posner has aptly cautioned that a "defendant should not be allowed to plead poverty if his employer or an insurance company is going to pick up the tab." *Kemezy v. Peters*, 79 F.3d 33, 37 (7th Cir. 1996).

While *Lawson* dealt with Wisconsin's unusual policy of indemnification for punitive and compensatory damages, courts of the Southern District commonly apply the *Lawson* principle to federal civil rights cases against Illinois public entities and their employees.

Defendants may argue that a limiting instruction focusing on punitive damages would cure any potential unfairness in allowing the jury to hear only about the Defendant Deputies' financial condition.  Plaintiff would counter that once the genie is out of the bottle, it is impossible to limit where it will go.  If the jury is informed that Defendants would have to personally pay punitive damages, but are told nothing about compensatory damages, they are left to wonder and speculate who pays the latter.  Such speculation can only confuse and mislead the jury on the question of compensatory damages.  Therefore, Plaintiff respectfully requests that this Court be guided by the general practice of Courts of this district and permit the Plaintiff to inform the jury as to who would pay for compensatory damages if Defendants open the door by putting the individual deputies' finances at issue in this case.

*Court Ruling:  Allowed* _____        *Denied* _____        *Taken Under Advisement* _____

12.     **To Preclude Argument of the Purported "Financial Gain" Motive for Litigation**

American jurisprudence has established a civil system of justice that in which the primary means of relief and redress involves financial restitution. This system is based on the United States Constitution, federal laws and statutes such as 42 U.S.C. Section 1983 and the common law. To attack this system of monetary relief at trial without basis and without evidence generates jury confusion and substantial prejudice against Plaintiff.

Defendants commonly argue that "all the plaintiff wants is money" or "this is about money." This argument is unfairly prejudicial as it attacks the fundamental basis behind the legal system. Indeed, courts commonly inquire of the venire if any prospective jurors have difficulty with the notion that financial compensation is to be awarded to a plaintiff is he can prove his case. If a member of the venire advises that he cannot follow that proposition, he will be excused for cause.

Additionally, setting forth this argument will lead Plaintiff to discuss matters that are irrelevant to the case at hand. For example, Plaintiff may have to discuss and lay the foundation for Section 1983 claims by reference to the United States Constitution, and origins and history of the Civil Rights Act of 1871, and the system of trial by jury that stands at the hear of the American judicial system. Plaintiff would need to discuss the nature of such civil rights claims and the history and importance of allowing ordinary citizens to bring these actions in federal court. Lastly, Plaintiff would have to note that no other relief is available to ordinary citizens whose Constitutional rights have been violated other than monetary relief. Citizens, for example, cannot obtain relief in the form of having a police officer fired in a police misconduct case nor would injunctive relief ordinarily be available. Because no other remedies are available under the law, demonizing the remedy that is provided by our system of justice undermines the legal

system, confidence in the judicial process and the purposes of federal civil rights statutes such as Section 1983.

Furthermore, the argument that Plaintiff has brought this lawsuit for monetary reasons and rather than to obtain justice for the harm that he suffered is irrelevant to the case at hand. Such a general claim does not connect to the underlying incident or the facts in the case – it is simply a way to prejudice the jury against any plaintiff who chooses to use the resources of the judicial system to obtain relief for the harm or injury he suffered.

The "they're only in it for the money" argument is particularly prejudicial considering extensive media coverage and discussion about ordinary citizens purportedly receiving large sums of money for so-called frivolous claims. Defendants play to this stereotype when they argue that the underlying purpose of bringing a civil lawsuit is to obtain money. The probative value of references to the relief given by a civil lawsuit is minimal. This Court will instruct the jury regarding monetary damages and Defendants add nothing but prejudice and confusion with this argument. For all these reasons, Plaintiff respectfully requests that the Defendants be precluded from mentioning or arguing this proposition.

*Court Ruling: Allowed* _____        *Denied* _____        *Taken Under Advisement* _____

13.    **To Prevent Witness Officers from Wearing Uniforms and Medals at Trial.**

For the same reasons as listed in Plaintiff's *Motion In Limine* No. 5, *infra*, Plaintiff asks this Court to enter an order to prevent any witness officers from wearing uniforms and medals at trial.

*Court Ruling: Allowed* _____        *Denied* _____        *Taken Under Advisement* _____

14.    **To Bar the Defense From Questioning or Presenting Evidence Concerning Whether the Plaintiff has Been Disciplined While Employed by the Illinois Department of Corrections.**

Discovery in this case has revealed that Plaintiff had incurred minor discipline from IDOC while employed there.  That discipline was not based upon any criminal action by the Plaintiff but instead of errors allegedly committed during his management of other employees.  This evidence if proven would be more prejudicial than probative, and irrelevant to any issue the jury must determine.

*Court Ruling:  Allowed* _____        *Denied* _____        *Taken Under Advisement* ____

15.    **To Prevent Expert Witness Darrell L. Ross, PhD from testifying as to:**
       **a. whether the Deputies' conduct was reasonable under the circumstances presented or that their actions were consistent with proper police procedure.**
       **b. Whether the Deputies' use of force was reasonable and/or not excessive.**

Dr. Ross' opinion report is 82 pages in length and contains many "opinions" regarding whether the Defendant Deputies acted reasonably.  Dr. Ross opines that Defendant Deputies used objectively reasonable force, that they responded prudently and followed proper police procedures, that the Plaintiff's actions required Defendant Deputies to use a TASER to protect themselves, that the Deputies had probable cause to believe that they were going to be attacked by the Plaintiff and the circumstances presented a dangerous, uncertain and rapidly tense situation, that a number of other "opinions" in an attempt to bolster the Defendant Deputies' version of events (i.e. their credibility).  These "opinions" improperly intrude upon the province of the jury.  Many of his "opinions" one-sidedly accept the position of the Defendant Deputies as being accurate when in fact many of those positions are either directly contradicted by the deputies themselves or by the dash cam video depicting the events.

"Expert testimony is admissible only when it will assist the trier of fact, and fact-intensive findings, such as whether there was deliberate indifference or excessive force, are within lay competence and are the prerogative of the jury," *Berardi v. Village of Sauget*, 2008 WL 5134185 at 2 (S.D. Ill. 2008) citing *Pena v. Leombruni*, 200 F3d 1031, 1034 (7th Cir. 1999) and *Thompson v. City of Chicago*, 472 F.3d 444, 455-458 (7th Cir. 2006).

Dr. Ross' testimony draws impermissible legal conclusions, relays credibility findings to the jury, and speaks to issues that are ultimately reserved to the jury.  His testimony has been limited in other cases to the extent Plaintiff requests as violative of Rule 702.  See *White v. Gerardot*, 1:05-CV-382 (N.D. IN Ft. Wayne Div. 2008) at 6.

The Seventh Circuit has prohibited expert witnesses from offering opinions or legal conclusions on issues that will determine the outcome of the case.  *Klaczak v. Consol. Med. Transp. Inc.*, 2005 WL 1564981, at 3 (N.D. Ill. 2005).  After hearing all of the evidence, the jury will be in as good or better position than Dr. Ross to determine whether the Defendant Deputies had a sufficient factual basis to reasonably believe that the Plaintiff posed a threat and whether the usage of the TASER twice was reasonable under the circumstances.

For these reasons the Plaintiff requests the above motion be granted and Dr. Ross' testimony not be allowed to include his opinions that the Defendant Deputies conduct was reasonable and not excessive.

Respectfully submitted,
Polinske & Associates, P.C.,


BY: /s Brian L. Polinske

701 North Main Street

Edwardsville, IL 62025
06211450
618.692.6520
polinske@sbcglobal.net

<u>CERTIFICATE OF SERVICE</u>

     I, the undersigned, do hereby certify that on November 30, 2022, a copy of this pleading was served upon all parties of record via ECF and upon the following parties:

Heidi L. Eckert
Brian Banocy
7777 Bonhomme Avenue, Ste. 1800
St. Louis, MO 63105

<u>/s Brian L. Polinske</u>